DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Daniel Dawalt, appeals his conviction out of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant was indicted on one count of complicity to commit trafficking in drugs in violation of R.C. 2923.03 and2925.03(A)(1)(C)(1)(d), a felony of the second degree. The alleged drug in question was Methylenedioxymethamphetamine, a Schedule I controlled substance, commonly referred to as ecstasy. Appellant was alleged to have engaged in complicity to traffic in an amount of ecstasy equal to or exceeding five times bulk amount, but *Page 2 
less than fifty times bulk amount. Bulk amount is ten pills. Appellant entered a plea of not guilty to the charge, and the matter was scheduled for trial on June 6, 2006. On June 2, 2006, appellant moved for a continuance of trial to allow defense counsel additional time to prepare for trial. The trial court summarily denied appellant's motion for continuance the same day.
 {¶ 3} On June 6, 2006, appellant's trial commenced with jury voir dire and selection. The jury was empanelled and the court recessed until the next morning. On June 7, 2006, defense counsel informed the court that appellant was asking the court to remove him as counsel and to appoint alternate counsel. Appellant requested the appointment of one of two specific attorneys. The trial court summarily denied appellant's request. Appellant then informed his attorney that he was dismissed.
 {¶ 4} The trial court asked appellant why he did not bring this to the court's attention prior to the empanelling of the jury. Appellant merely stated that his attorney "has denied me all the jobs he is supposed to do as my agent, my clerk to the Court." He asserted that he did not receive any discovery, that his attorney only had notes and not questions written out to ask the witnesses, and that his attorney's actions left him completely unprepared for trial. Appellant asked the trial court "that this case be thrown out period." The trial court denied appellant's motion for a dismissal of the charge. *Page 3 
 {¶ 5} The trial court inquired whether appellant wished to represent himself. Appellant responded that it would be unfair, because he has no knowledge of the law. He asserted, however, that if the court would not appoint alternate counsel, he would be forced to represent himself. Because the trial court found that appellant had not articulated good cause to remove current appointed counsel, it denied appellant's request for removal. The trial court further refused to accept appellant's prof erred waiver of the right to counsel, because of appellant's repeated assertions that he would represent himself only because he felt he was being forced to do so.
 {¶ 6} The trial court found that appellant was attempting to defeat the process of administering justice by refusing to accept or discharge counsel, while also refusing to waive his constitutional right to counsel. Due to appellant's continued protestations, the trial court presented appellant with two options. The court informed appellant that he could either move for a mistrial on the grounds that he did not want current appointed counsel to represent him, or he could continue with that attorney representing him. Early in the discussion with the court, appellant requested a mistrial, that the jury be dismissed and that alternate counsel be appointed to represent him. However, in later discussions, appellant was clear that he was not willing to move for a mistrial because it would toll his time. He renewed his motion to dismiss, and the court denied that motion. The trial court asked one final time whether appellant was prepared to move for a *Page 4 
mistrial. Appellant responded that he did not believe so, and the matter proceeded to trial.
 {¶ 7} At the conclusion of trial, the jury found appellant guilty of complicity to commit trafficking and made the additional finding that the amount of the controlled substance equaled or exceeded five times the bulk amount but was less than fifty times the bulk amount. Appellant timely appeals, raising three assignments of error for review. This Court consolidates some assignments of error and rearranges others for ease of review.
 II. ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN SUMMARILY DENYING APPELLANT'S MOTIONS FOR CONTINUANCE PRIOR TO TRIAL, AS WELL AS HIS TRIAL MOTIONS FOR MISTRIAL AND FOR APPOINTMENT OF SUBSTITUTE APPOINTED COUNSEL."
 {¶ 8} Appellant argues that the trial court erred by denying his pretrial motion for continuance, motion for appointment of alternate counsel and concomitant motion for continuance, and his motion for mistrial. This Court disagrees.
 {¶ 9} The decision whether to grant or deny a continuance lies within the sound discretion of the trial court and should not be reversed on appeal absent an abuse of discretion. State v. Unger (1981),67 Ohio St.2d 65, 67. An abuse of discretion is more than an error of judgment; it means that the trial court was *Page 5 
unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 10} In determining whether the trial court abused its discretion by denying a motion for a continuance, this Court must "apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party." Burton v. Burton (1999),132 Ohio App.3d 473, 476, citing Unger, 67 Ohio St.2d at 67-68. The following factors should guide the trial court's decision whether or not to grant a continuance, and are considered by this Court in our review of such a decision:
 "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to the litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [moving party] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors[.]" Unger, 67 Ohio St.2d at 67-68.
 {¶ 11} This Court finds that the trial court did not abuse its discretion by denying appellant's initial request for a continuance of trial.
 {¶ 12} Appellant filed his motion in the afternoon of Friday, June 2, 2006, requesting that the trial scheduled for the following Tuesday be continued to allow *Page 6 
for further time to prepare for trial. On March 31, 2006, the trial court issued an order directing, in part, that all pretrial motions be filed in accordance with Crim.R. 12, or they would be summarily denied unless leave of court is obtained prior to filing. Crim.R. 12(D) mandates that all pretrial motions be filed within 35 days after arraignment or 7 days before trial, whichever is earlier. Appellant moved for a continuance of trial a mere 4 days prior to trial. In addition, the trial court scheduled a final pretrial on May 30, 2006. There is no indication in the record that appellant indicated at that time that he was not prepared for the scheduled June 6, 2006 trial.
 {¶ 13} Appellant failed to request an alternate date for trial or otherwise indicate to the court how much time he would need to prepare for trial. Accordingly, the length of the delay was indeterminate. As it is reasonable to believe that witnesses would have been subpoenaed or notified of the trial date by the time of the filing of appellant's motion, there would be inconvenience to the State and witnesses who had already cleared their calendars for the scheduled trial. Weighing the competing interests, this Court finds that the trial court was not unreasonable, arbitrary or unconscionable in denying appellant's motion for continuance.
 {¶ 14} This Court further finds that the trial court did not err by denying appellant's motion for the appointment of substitute counsel. "An indigent defendant has no right to have a particular attorney represent him and therefore *Page 7 
must demonstrate `good cause' to warrant substitution of counsel."State v. Cowans (1999), 87 Ohio St.3d 68, 72, quoting United States v.Iles (C.A.6, 1990), 906 F.2d 1122, 1130. The Ohio Supreme Court continued:
 "[T]he trial judge may * * * [deny the requested substitution and] require the trial to proceed with assigned counsel participating if the complaint * * * is unreasonable." State v. Deal (1969), 17 Ohio St.2d 17, syllabus. The trial court's decision is reviewed under an abuse-of-discretion standard. Iles, 906 F.2d at 1130, fn. 8." Cowans, 87 Ohio St.3d at 72-73.
 {¶ 15} In addition, "[t]o discharge a court-appointed attorney, the defendant must show `a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel.'" State v. Coleman (1988), 37 Ohio St.3d 286,292, quoting People v. Robles (1970), 2 Cal.3d 205, 215. A mere "[disagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of counsel. Moreover, mere hostility, tension and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense." (Internal citations omitted.) State v. Furlow, 2d Dist. No. 03CA0058,2004-Ohio-5279, at ¶ 12.
 "Instead, to warrant discharge of court-appointed counsel, a defendant is required to show `good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust result.' State v. Smith (Dec. 29, 1998), 4th Dist. No. 98CA12, quoting State v. Blankenship (1995), 102 Ohio App.3d 534, 558. Defendant bears the burden of presenting evidence that demonstrates grounds for the appointment of new counsel. If a `defendant alleges facts, which, if true, would require relief, the trial court must inquire into the *Page 8 
defendant's complaint and make the inquiry part of the record.' Smith, supra, citing Deal, 17 Ohio St.2d at 20. Although the inquiry may be brief and minimal, the inquiry must be made. State v. King (1995), 104 Ohio App.3d 434, 437; Smith, supra. `Even that limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.' Smith, supra, citing Deal, supra." State v. Alexander, 10th Dist. Nos. 05AP-192, 05AP-245, 2006-Ohio-1298, at ¶ 16.
 {¶ 16} In this case, although the trial court engaged in a lengthy discussion on the record to determine appellant's concerns with counsel, appellant failed to articulate with specificity any breakdown in the attorney-client relationship. Appellant complained that he had not been presented with any evidence; that his attorney was only attempting to plea bargain; that he believed his attorney "breezed by" him in the court room; that his attorney merely had notes and no questions written in preparation for trial; and that he has contempt for his attorney. Appellant asserted that he wanted one of two other attorneys to represent him, because he had heard that they were aggressive. Appellant requested that alternate counsel be appointed and that they be given 30-40 minutes to prepare his defense before the jury which had been empanelled. Significantly, appellant raised no concerns regarding his appointed counsel on the day of the jury voir dire.
 {¶ 17} The trial court allowed another attorney, Mr. Spears, to speak with appellant in the presence of his appointed counsel to discuss the ramifications of self-representation. Despite appellant's allegations to the contrary in his brief, the trial court never appointed Mr. Spears to represent appellant in this matter. In any event, Mr. Spears asserted that he would not be willing to represent appellant. *Page 9 
 {¶ 18} Significantly, appellant does not assign as error the ineffectiveness of trial counsel. Further, the record reflects that appointed counsel represented appellant in a competent manner.
 {¶ 19} Under these circumstances, this Court finds that appellant failed to demonstrate that there was a complete breakdown of the attorney-client relationship which interfered with the preparation or presentation of his defense. Accordingly, the trial court did not abuse its discretion by denying appellant's motion for the appointment of substitute counsel. Therefore, the trial court did not abuse its discretion by denying appellant's renewed motion for a continuance to allow substitute counsel to prepare for trial.
 {¶ 20} Finally, appellant argues that the trial court erred by failing to grant his motion for a mistrial.[1] The decision whether to grant or deny a motion for mistrial lies in the sound discretion of the trial court and will not, therefore, be reversed absent an abuse of discretion. State v. Garner (1995), 74 Ohio St.3d 49, 59, citingState v. Glover (1988), 35 Ohio St.3d 18; State v. Widner (1981),68 Ohio St.2d 188, 190. "Mistrials need to be declared only when the ends of justice *Page 10 
so require and a fair trial is no longer possible." State v.Franklin (1991), 62 Ohio St.3d 118, 127.
 {¶ 21} This Court has already found that the trial court did not abuse its discretion by denying appellant's motion for the appointment of substitute counsel, because appellant failed to articulate good cause for appointed counsel's removal. Because appellant failed to demonstrate the existence of a complete breakdown in the attorney-client relationship, the trial court did not abuse its discretion by denying appellant's motion for a mistrial on the asserted grounds that a complete breakdown existed and he was entitled to the appointment of substitute counsel. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR I "THE VERDICT AND JUDGMENT IS NOT SUSTAINED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 ASSIGNMENT OF ERROR III "THE STATE FAILED TO PROVE THAT APPELLANT DAWALT HAD ANY PRECEDING CONNECTION TO THE ALLEGED CRIME OF TRAFFICKING IN DRUGS IN VIOLATION OF [R.C.] 2923.03 AND 2925.03(A)(1)(C)(1)(D) A FELONY OF THE SECOND DEGREE. ACCORDINGLY, THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY DENYING APPELLANT'S [CRIM.R.] 29 MOTION TO DISMISS THE ALLEGED CASE AGAINST APPELLANT, SINCE [sic] OHIO DOES NOT RECOGNIZE THE ALLEGED CRIME OF ACCESSORY AFTER THE FACT."
 {¶ 22} Appellant argues that the trial court erred in overruling his motion for judgment of acquittal, because the State presented insufficient evidence to *Page 11 
support the charge of complicity to commit trafficking in drugs. Appellant further argues that his conviction is against the manifest weight of the evidence. This Court disagrees.
 {¶ 23} Crim.R. 29(A) provides, in relevant part:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 24} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.State v. Jenks (1991), 61 Ohio St.3d 259, 279. *Page 12 
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 25} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 26} A new trial should be granted, however, only in the exceptional case, where the evidence weighs heavily against the conviction. Id. In fact, while this Court must weigh the evidence and consider the credibility of witnesses, it is well settled that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. *Page 13 
 {¶ 27} This Court has stated that "[sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 28} Appellant was charged with complicity to commit trafficking in drugs in violation of R.C. 2923.03 and 2925.03(A)(1)(C)(1)(d). Specifically, appellant was charged with aiding and abetting another in the commission of the underlying offense. R.C. 2923.03 states, in relevant part: "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense[.]
* * *" R.C. 2925.03(A)(1) states that "No person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" R.C. 2925.03(C)(1)(d) provides that the sale or offer to sell a schedule I or II drug in an amount equal to or exceeding five times the bulk amount but less than fifty times the bulk amount is a felony of the second degree. R.C.2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Page 14 
 {¶ 29} The Ohio Supreme Court has held:
 "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson (2001), 93 Ohio St.3d 240, syllabus.
 {¶ 30} At trial, Agent Michael Polen of the Medway Drug Enforcement Agency testified that he became involved in an investigation involving Mark Dukles and appellant. He testified that on February 8, 2006, he used a confidential informant, Benjamin Levy, to help make a controlled purchase of Methylenedioxymethamphetamine, or ecstasy, from Mark Dukles. He testified that the drug is a schedule I controlled substance that is known on the streets by various names like X, rolls and rollerblade, and that "[n]o one ever comes out and says ecstasy." Agent Polen testified that he had Mr. Levy place phone calls to Mark Dukles in an attempt to purchase ecstasy pills. Agent Polen authenticated taped recordings of the phone calls made. The recorded calls were played for the jury and admitted as exhibits.
 {¶ 31} In the phone calls, Mr. Levy told Dukles that he had a friend who wanted to purchase up to 60 "rollerskates." Dukles stated that he had 50 [ecstasy pills] left, but he was hesitant to sell to someone he did not know. Dukles stated that the 50 pills would cost $550.00, and Mr. Levy and Dukles discussed how to consummate the deal over the course of several phone calls. During the second *Page 15 
phone call, Dukles told Mr. Levy that he did not want to meet Levy's friend in the proposed McDonald's parking lot because he did not know or trust him. In the third phone call, Dukles and Levy continued to try to work out the deal. Mr. Levy had told Dukles that he had to pick up his belongings at an apartment but that he wanted to let his friend buy the drugs before that. Dukles is heard on the recording asking someone nearby, "Do you want to do it before he goes to the apartment, Dan?" The other person answered, "Yeah."
 {¶ 32} Agent Polen testified that he supplied Mr. Levy with $550.00 before Dukles was supposed to arrive for the sale. He testified that a vehicle pulled into the parking lot and parked to the passenger's side of his vehicle. He testified that a woman was driving and that Mr. Levy identified appellant as the passenger. Dukles was not in the passenger compartment of the vehicle. Agent Polen testified that he and Mr. Levy exited their vehicle and spoke with appellant who told them that he would take Mr. Levy "to him." The agent testified that appellant was offering to take Mr. Levy to where Dukles was. Agent Polen testified that he refused to let Mr. Levy go with appellant out of concern for Mr. Levy, the surveillance officers because of the road conditions, and because they would lose control over the situation. Appellant left and no drugs or money were exchanged.
 {¶ 33} Benjamin Levy testified that he was living with a friend, when Mark Dukles and appellant moved into the apartment with them. He testified that he did not know either person previously. Mr. Levy testified that he heard appellant refer *Page 16 
to ecstasy as "rollerskates" while they lived together. He further testified that he had seen Dukles and appellant buy and sell ecstasy pills together on earlier occasions.
 {¶ 34} Mr. Levy testified that he agreed to work with Medway as a confidential informant to purchase drugs from Mark Dukles, the target of their investigation. He testified that he made several phone calls to Dukles to set up a purchase transaction. He testified that he was on the phone with Dukles when Dukles asked "Dan" if he wanted to do it now. Mr. Levy testified that after Dukles offered to sell 50 ecstasy pills for $550.00, he and Agent Polen waited in the McDonald's parking lot for Dukles to arrive with the drugs. He testified that a woman and appellant arrived instead. He testified that they told him to get in the car, but he refused because Agent Polen had told him not to leave with them.
 {¶ 35} Agent Alan Bupp of the Medway Drug Enforcement Agency testified that he was running a surveillance camera in the McDonald's parking lot during the investigation. He authenticated a DVD which he recorded that night. The DVD was played for the jury and admitted as an exhibit. The DVD showed a vehicle park near Agent Polen's vehicle. It showed Agent Polen and Mr. Levy exit their vehicle and speak with the occupants of the other vehicle. The audio confirmed the discussion between appellant and Mr. Levy.
 {¶ 36} Senior Agent Charles Ellis of the Medway Drug Enforcement Agency testified that he was conducting audio and video surveillance for this case *Page 17 
on February 8, 2006. Specifically, he was listening to the audio worn by the confidential informant, Mr. Levy, and watching the events in the parking lot. Agent Ellis testified that he had seen Mark Dukles on a prior occasion. He testified that he was aware that no hand to hand drug transaction occurred at the scene, so he pursued appellant's vehicle after it left the parking lot. He testified that he followed appellant's vehicle to a nearby Drug Mart, where he observed appellant and a female standing outside the vehicle and Mark Dukles exiting the Drug Mart with some purchases. Agent Ellis testified that all three persons left and traveled to Speedway, where he observed appellant, Dukles and the woman standing outside the vehicle. He testified that he then ended his surveillance. Agent Ellis conceded that he never found any drugs and that it was Mark Dukles who offered to sell the drugs to Agent Polen who was posing as Mr. Levy's friend.
 {¶ 37} This Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of appellant. The weight of the evidence supports the conclusion that Mark Dukles' offer to sell fifty pills of Methylenedioxymethamphetamine was on-going over the course of the several phone calls between Dukles and the confidential informant. The evidence further supports the conclusion that appellant was present with Dukles as Dukles negotiated the drug deal and made the offer to sell. The police tape of the phone calls evidences Dukles asking "Dan" whether he wanted to proceed with the drug transaction at that time. "Dan" responded, "Yeah." The evidence demonstrates *Page 18 
that it was appellant, Daniel Dawalt, who appeared at the location agreed upon for the sale, and that he informed Mr. Levy that he would take him to Dukles. Accordingly, the evidence does not support the conclusion that appellant was merely an accessory after the fact. Rather, the evidence supports the conclusion that appellant was supporting, assisting and cooperating with Dukles at the time Dukles was negotiating the offer to sell the 50 pills of ecstasy to Mr. Levy and his "friend."
 {¶ 38} A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting appellant of complicity to commit trafficking in drugs. This Court finds that appellant's conviction is not against the manifest weight of the evidence. Having found that appellant's conviction is not against the weight of the evidence, this Court further necessarily finds that there was sufficient evidence to support the jury's verdict. Appellant's first and third assignments of error are overruled.
 III. {¶ 39} Appellant's assignments of error are overruled. Appellant's conviction out of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed. *Page 19 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
FOR THE COURT
SLABY, P. J.
MOORE, J.
CONCUR
[1] Appellant was adamant late in the discussion that he did not want to move for a mistrial, because he was not willing to toll time and waive his speedy trial rights. However, early on in the discussion, he informed the court that he wanted a mistrial declared and the appointment of substitute counsel. Accordingly, this Court analyzes this portion of the assignment of error under the premise that appellant affirmatively moved for a mistrial. *Page 1