[Cite as *State v. Smith*, 2024-Ohio-324.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     30476 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEAERRE ANTHONY SMITH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 20 08 2217 |

DECISION AND JOURNAL ENTRY

Dated: January 31, 2024

STEVENSON, Judge.

{¶1}     Defendant-Appellant, Deaerre Smith, appeals from the judgment of the Summit County Court of Common Pleas revoking his community control and imposing a prison term. We affirm.

I.

{¶2}     In October 2017, Mr. Smith pleaded guilty to trafficking in marijuana, a felony of the fifth degree, in violation of R.C. 2925.03(A)(2)/(C)(3) in Case Number CR 2017-06-2249. He was sentenced to a term of two years of community control with a reserved prison term of 11 months if he violated any law or the conditions of community control or left the state without permission of the court. In March 2019, Mr. Smith pleaded guilty to a community control violation and the trial court imposed the 11-month sentence.

{¶3}     In September 2020, Mr. Smith was indicted on one count of having weapons while under disability ("HWWUD"), a felony of the third degree in violation of R.C. 2923.13(A)(3)/(B),

in Case Number CR 2020-08-2217. The predicate offense was the conviction for trafficking in marijuana in Case Number CR 2017-06-2249. In July 2021, Mr. Smith pleaded guilty to the HWWUD offense and was sentenced to two years of community control with reserved prison time of three years.

{¶4} In November 2021, a notice of probation violation was filed by the Summit County Adult Probation Department in the HWWUD case and in Case Number CR 2020-08-2058 (possession of fentanyl-related compound). After numerous continuances and three new counsel appointments, the matter came on for a community control violation hearing on September 12, 2022. Mr. Smith appeared represented by his fourth attorney, Donald Walker. The State presented the testimony of Probation Officer Jennifer Haviland. Mr. Smith was the sole witness in his case.

{¶5} Following the hearing, the trial court revoked Mr. Smith's community control and imposed the three-year prison sentence for HWWUD. The trial court ordered that sentence to run concurrently with the one-year sentence in Case Number CR 2020-08-2058. The one-year sentence in Case Number CR 2020-08-2058 ended in May 2023.

{¶6} Mr. Smith timely appealed in the HWWUD case only and asserts four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED BY IMPOSING ANY SENTENCE[.]**

{¶7} Mr. Smith maintains that the predicate offense for HWWUD, trafficking in marijuana, is an impermissible basis for restricting a person from having a firearm. He argues that there is no constitutional basis to prevent him from possessing a firearm; that the HWWUD statute

violates the Second Amendment to the United States Constitution; and that he cannot, therefore, be subject to a prison sentence.

**{¶8}** According to the case docket, Mr. Smith did not file a direct appeal from the trial court's original sentencing decision in July 2021. Because Mr. Smith could have raised his argument pertaining to his original sentence on direct appeal but did not, he is now barred from raising that argument in a subsequent proceeding under the doctrine of res judicata. *See State v. Williams,* 9th Dist. Summit No. 27482, 2015-Ohio-2632, ¶ 7. Therefore, he is precluded from challenging his original sentence in this appeal. Mr. Smith's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR NEW COUNSEL[.]**

**{¶9}** In support of his second assignment of error, Mr. Smith states in his merit brief that "[t]he trial court effectively denied appellant counsel at the CCV hearing," citing in support *Gideon v. Wainwright*, 372 U.S. 335 (1963) (Sixth and Fourteenth Amendments provide that an indigent defendant has the right to appointed counsel for his defense). As Mr. Smith was represented at trial we read his argument to be that it was error for the court to deny his oral motion for new counsel, not that he was denied counsel at the hearing. Mr. Smith's argument is predicated on the following exchange that occurred at the start of the hearing:

> [MR. SMITH]: Excuse me. Before we get started, I want to fire my attorney for ineffective counsel.
>
> THE COURT: This is your fourth attorney, and so - -
>
> [MR. SMITH]: It is my third - -
>
> THE COURT: It's your fourth. You had Angelina Gingo, you had Scott Rilley, you had Ed Smith and now you have Mr. Walker - -
>
> * * *

[MR. SMITH]: But I also - -

THE COURT: Stop talking.

[MR. SMITH]: I also don't feel comfortable because you already have me on probation over a case that I'm not even supposed to be on probation for, so you violated my civil rights and my due process.

THE COURT: Well, you can appeal when we get to that point, but we are going to proceed with the hearing today.

[MR. SMITH]: I don't want to proceed.

THE COURT: You have two options. You can admit the violations or you can have a hearing, your choice.

[MR. SMITH]: I'll have a hearing.

THE COURT: Then we will have a hearing. All right.

[MR. SMITH]: I don't want a hearing right now, I'm not equipped. My lawyer didn't do what he needed to do and you all didn't give me everything I needed to be able to come in and be presentable with my case so I could fight for myself.

And y'all got me down there in county where they're violating my civil rights down there with the food, the lockdown and with everything else that's going on down there that's violating all my constitutional and civil rights as a citizen, and I can't do nothing about it.

And there's nothing that's going on, and what you are trying to do right now is violate me over and over and over, until I end up to where it's over.

So I don't feel comfortable proceeding, I am not ready. Y'all didn't let me get ready. I didn't get a chance to get ready, my lawyer didn't come ready, nobody came ready.

THE COURT: All right. Your objections have been placed upon on (sic) the record.

\* \* \*

{¶10} Decisions regarding substitution of counsel are within the discretion of the trial court. *State v. Jones*, 91 Ohio St.3d 335, 343–344 (2001). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio

St.3d 217, 219(1983). The Supreme Court of Ohio has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385.

*State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24.

{¶11} "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *State v. Simmons*, 9th Dist. Lorain No. 18CA011262, 2020-Ohio-614, ¶ 22, quoting *Jones* at 243, quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

{¶12} As this Court has previously stated,

> [T]o warrant discharge of court-appointed counsel, a defendant is required to show good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust result. Defendant bears the burden of presenting evidence that demonstrates grounds for the appointment of new counsel. If a defendant alleges facts, which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record. Although the inquiry may be brief and minimal, the inquiry must be made. Even that limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.

*State v. Dawalt*, 9th Dist. Medina No. 06CA0059-M, 2007-Ohio-2438, ¶ 15 (Internal quotations and citations omitted.) "A mere '[d]isagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of counsel." *Id.* Therefore, a trial court is not required

to conduct further inquiry into a defendant's complaints about his counsel when the defendant expresses only a generalized dissatisfaction with counsel's performance but does not allege any specific facts. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 165.

{¶13} Regarding the timeliness of Mr. Smith's motion, when the timing of a request for new counsel is an issue, a trial court may assess whether the appellant's request for new counsel was made in bad faith. *See State v. Graves,* 9th Dist. Lorain No. 98CA007029, 1999 WL 1215161, *3 (Dec. 15, 1999). A motion for new counsel made on the day of trial "intimates such motion is made in bad faith for the purposes of delay." *State v. Haberek*, 47 Ohio App.3d 35, 41 (8th Dist.1988). In *Graves*, this Court held that the trial court's refusal to appoint new counsel was not an abuse of discretion when the defendant showed bad faith by making a request on the day of trial when the trial date was set two months in advance. *Id*. at *3. *See also State v. Gaskins*, 9th Dist. Medina No. 06CA0086-M, 2007-Ohio-4103, ¶ 43 (Absent a legitimate basis for request, trial court's denial of motion for new counsel the day before trial not an abuse of discretion).

{¶14} Here, Attorney Walker was appointed on July 25, 2022, and appeared in court with Mr. Smith on that date. Thus, Mr. Smith had seven weeks before the within hearing to request new counsel. Therefore, his oral motion made at the beginning of the within proceedings indicates that it was likely made in bad faith as a delay tactic. That likelihood is corroborated by the fact that this was his fourth request for new counsel.

{¶15} We turn now to the adequacy of the trial court's inquiry into Mr. Smith's request. The record reflects that the trial court interrupted Mr. Smith as the court was listing his four attorneys in this matter, telling him to "stop talking." However, directly after the interruption, Mr. Smith nonetheless proceeded to speak uninterrupted for several paragraphs regarding the reasons for his request, following which the trial court stated that Mr. Smith's objections were noted for the

record. Thus, the record does reflect the trial court heard Mr. Smith's reasoning for his request for new counsel. Perhaps the better practice would have been for the trial court to conduct a minimal inquiry regarding Mr. Smith's concerns directly after he vocalized his desire to fire his attorney rather than cut him off. However, Mr. Smith was then given the opportunity to fully speak and state the grounds for his request, and the trial court addressed his claims before the commencement of the hearing.

{¶16} Another court has addressed this issue. In *State v. Petty*, 8th Dist. Cuyahoga No. 105222, 2017-Ohio-8732, prior to the commencement of trial, the parties appeared before the court to discuss the State's plea offer. *Id*. at ¶ 3. During that colloquy, Mr. Petty requested new counsel, and as he began to speak, the court interrupted him and proceeded with the hearing. *Id*. Later, during voir dire, Mr. Petty decided to accept the State's plea offer. *Id*. at ¶ 5. After entering his plea and prior to sentencing, he filed pro se motions to withdraw his plea and to disqualify counsel. *Id*. at ¶ 6. At sentencing, he told the court he wished to withdraw those motions and proceed to sentencing. *Id*. at ¶ 7. On appeal, Mr. Petty argued that the trial court erred in denying his request for new counsel at the plea hearing because it interrupted him and did not properly investigate further his dissatisfaction with his counsel. The Eighth District Court of Appeals found that the record after the plea hearing contained Mr. Petty's reasoning for requesting new counsel as his pro se motion to disqualify counsel listed the reasons for his unhappiness with counsel. *Id*. at ¶ 24. It also noted that Mr. Petty was given other opportunities to speak at the plea hearing at which time he could have explained his reasoning behind his request for new counsel but did not do so. *Id*. at ¶ 22. The court ultimately held that Mr. Petty's request "was not sufficiently specific to trigger the trial court's duty to investigate further." *Id*. at ¶ 25.

{¶17} Similarly, here, even though the trial court initially interrupted Mr. Smith, he continued speaking uninterrupted. Thus, the record contains his reasons for his dissatisfaction with trial counsel and request for new counsel. The trial court heard and acknowledged those reasons. However, they are best characterized as vague, general criticisms rather than specific facts about lack of discovery, the violation of his constitutional rights while being held in jail, trial counsel's lack of preparation, and the allegedly unfounded community control violations. Mr. Smith's complaints do not allege or reveal specific objections regarding trial counsel's effectiveness or adequacy of representation. Rather, it seems that Mr. Smith was generally dissatisfied with the proceedings overall and all persons involved. Therefore, we find that Mr. Smith's reasoning behind his request was not sufficiently specific to trigger the trial court's duty to investigate further. Accordingly, Mr. Smith's claim regarding the trial court's failure to inquire further is not well-taken.

{¶18} Turning now to the final factor that we must consider in analyzing Mr. Smith's request for new counsel, the record does not reflect a total lack of communication or irreconcilable conflict between Mr. Smith and Attorney Walker that jeopardized Mr. Smith's right to the effective assistance of counsel. Mr. Smith made no argument of any breakdown in communication with Attorney Walker that prevented an adequate defense.

{¶19} Based on the foregoing, after consideration of the record, we conclude that the trial court did not abuse its discretion by denying Mr. Smith's request for substitute counsel. Therefore, Mr. Smith's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

**APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL**.

{¶20} In his third assignment of error, Mr. Smith argues that his appointed trial counsel was ineffective. He states in his merit brief that trial counsel "did not speak in support of his client's request for new counsel, nor did he claim that they had sufficient time to prepare." In support, he points to the fact that trial counsel initially told the trial court he had no witnesses, yet when the court asked for closing arguments, trial counsel informed the court that Mr. Smith wanted to take the stand. Thus, it appears Mr. Smith is arguing that trial counsel's failure to affirmatively assert he was prepared, together with Mr. Smith's last-minute decision to testify, automatically means that trial counsel was unprepared and that his representation was deficient. We disagree.

{¶21} To warrant reversal based on ineffective assistance of counsel, the defendant must show that his counsel was "deficient and that he was prejudiced by that deficiency." *State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530, ¶ 37. "'[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

{¶22} Here, the record reflects that trial counsel gave a brief opening statement wherein he defended Mr. Smith by arguing that the violations at issue were minor and did not warrant imposition of prison time. He requested that Mr. Smith be permitted to continue on community control. He also drew attention to Mr. Smith's mental health issues as a mitigating factor. Trial counsel cross-examined the State's witness and conducted a thorough direct examination of Mr. Smith when he decided to testify, inquiring specifically as to the bases that Mr. Smith believed supported his defense. While trial counsel did not affirmatively state that he was prepared, he also

did not request a continuance nor state that he was unprepared when Mr. Smith changed his mind about testifying.

{¶23} Based on the record before us, while we have no way of discerning what particular steps, if any, trial counsel took to prepare for the hearing, we certainly cannot conclude that it shows he did not prepare or that his representation was in any way deficient. Moreover, even if that were true, Mr. Smith does not demonstrate that any such deficiencies resulted in prejudice such that the outcome would have been different, especially when considering the State's substantial evidence, set forth below, proving the violations.

{¶24} Ms. Haviland testified that Mr. Smith violated the terms and conditions of community control with multiple failures to report, a new arrest, multiple positive tests for marijuana and alcohol, and failing to submit to several random urinalysis screens. In addition, Ms. Haviland noted that on May 11, 2022, the parties were in court for the hearing; however, Mr. Smith left prior to the hearing, which also is a violation of the terms and conditions of probation. While Mr. Smith claims he had valid excuses for failing to appear for appointments and maintains that Ms. Haviland knew he had contact with law enforcement, irrespective of Mr. Smith's failure to report the same, he does not deny testing positive for marijuana or failing to appear for the May 11, 2022, hearing. In defense of testing positive for marijuana, Mr. Smith offered that he was in the process of obtaining his medical marijuana card but admitted he had not yet received it. He also did not deny failing to reengage with Summit Psychological Associates to address his mental health and substance abuse issues, which was also a condition of his probation.

{¶25} Accordingly, even if his counsel had been deficient in the manner Mr. Smith alleges, considering the State's overwhelming evidence that proved the violations, Mr. Smith could

not meet his burden of demonstrating that he was prejudiced by counsel's performance. Therefore, Mr. Smith's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**APPELLANT WAS DENIED DUE PROCESS AND DUE COURSE OF LAW DURING THIS CCV HEARING[.]**

{¶26}   In this assignment of error, Mr. Smith claims that he was denied due process and "fundamentally was denied a disinterested and impartial judicial officer."  We disagree.

{¶27}   When an appellant fails to support his assignment of error by citing to the record and pointing to case law to support the argument, this Court may disregard the argument in its entirety. *Marquez v. Jackson*, 9th Dist. Lorain No. 16CA011049, 2018-Ohio-346, ¶ 21, citing App.R. 16(A)(7) and former Loc.R. 7(B)(7).  Mr. Smith does not cite to any portions of the record that support his claim that the judicial officer in this case was not disinterested and impartial.

{¶28}   Furthermore, the two cases that Mr. Smith references in support of his argument are not applicable here.  In *Ward v. Monroeville*, 409 U.S. 57 (1982), and *Rose v. Peninsula*, 839 F. Supp. 517 (N.D. Ohio 1993), the complaining parties were deemed to have valid due process claims because the village ordinances at issue were designed to encourage violations in order to assess fines and penalties that, in turn, constituted a substantial source of revenue for the villages. *Ward* at 59-60; *Rose* at 525-526.  Here, no governmental entities stand to enjoy substantial financial gain from probation violation proceedings, especially since the trial court waived the balance of any costs and fees that were due and owing.

{¶29}   Moreover, the record shows that Mr. Smith received due process.  In order to comport with the requirements of due process, probation violation proceedings must include: written notice of the claimed violations; disclosure of the evidence against him; the opportunity to be heard and present witnesses and evidence; the right to confront and cross-examine adverse

witnesses; a neutral and detached hearing body; and a written statement of the evidence supporting the revocation. *State v. Motz*, 12th Dist. Warren No. CA2019-10-109, 2020-Ohio-4356, ¶ 17. *See also Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). Our review of the record reveals that all those requirements were met in this case. Accordingly, Mr. Smith's fourth assignment of error is overruled.

## III.

**{¶30}** Mr. Smith's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
<u>CONCURS.</u>

CARR, P. J.
<u>DISSENTING.</u>

**{¶31}** I respectfully dissent from the judgment of the majority, as I would conclude that Smith's second assignment of error should be sustained.

**{¶32}** "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *State v. Simmons*, 9th Dist. Lorain No. 18CA011262, 2020-Ohio-614, ¶ 22, quoting *State v. Jones*, 91 Ohio St.3d 335, 342 (2001).

**{¶33}** Here, the dialogue between the trial court and Smith does not reflect that the trial court inquired into Smith's complaint at all. In fact, the trial court told Smith to stop talking when Smith attempted to elaborate on the issue. I do not view the remainder of the discussion as Smith explaining why he believed he needed new counsel; instead, it appears to represent Smith's response as to why he did not believe he was equipped to go forward with the hearing.

**{¶34}** Moreover, because of the lack of inquiry on the part of the trial court, there is little to evaluate with respect to the last factor: "whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Simmons* at ¶ 22, quoting *Jones* at 342.

**{¶35}** Given the foregoing, I would sustain Smith's second assignment of error.

APPEARANCES:

MARK LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.