[Cite as *State v. Ford*, 2018-Ohio-5169.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 106394

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**NATHAN FORD**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-614544-A

**BEFORE:** McCormack, P.J., Stewart, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 20, 2018

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, 2d Floor
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Mary Weston
Melissa Riley
Daniel T. Van
Assistant Prosecuting Attorneys
1200 Ontario Street, 9th Floor
Cleveland, OH 44113

TIM McCORMACK, P.J.:

{¶1}   Defendant-appellant Nathan Ford ("Ford") appeals his conviction for rape, kidnapping, aggravated burglary, robbery, and gross sexual imposition.   For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶2}   This case stems from three separate incidents, each involving a different victim, T.H., L.G., and S.G.   In a 2005 case, Ford was convicted of multiple counts of rape, kidnapping, gross sexual imposition, felonious assault, and aggravated robbery based on seven separate incidents that occurred between 1996 and 2004.   *State v. Ford*, 8th Dist. Cuyahoga Nos. 88946 and 88947, 2007-Ohio-5722.   All of the underlying charges in the present case were the result of subsequent CODIS hits.[1]

---

[1]"CODIS" stands for the Combined DNA Index System database, a searchable database used to collect and store DNA profiles from convicted offenders.   DNA from rape kits are entered into the system to search for a matching

{¶3} Ford was indicted in this case on March 28, 2017. As to T.H., Ford was indicted on two counts of rape and one count of kidnapping. All three counts carried one- and three-year firearm specifications and sexually violent predator specifications; the kidnapping count also carried a sexual motivation specification. The events leading to these charges occurred on or about August 30, 2001.

{¶4} As to L.G., Ford was indicted on one count of aggravated burglary, one count of aggravated robbery, one count of robbery, two counts of gross sexual imposition (one of which carried a sexually violent predator specification), four counts of rape (all of which carried a sexually violent predator specification), and two counts of kidnapping (one of which carried a sexual motivation specification and a sexually violent predator specification). The events leading to these charges occurred on or about March 23, 2004.

{¶5} Thirdly, as to S.G., Ford was indicted on one count of aggravated burglary, two counts of gross sexual imposition with sexually violent predator specifications, one count of rape with a sexually violent predator specification, and one count of kidnapping with a sexual motivation specification and a sexually violent predator specification. All counts against S.G. also carried one- and three-year firearm specifications. The events leading to these charges occurred on or about March 29, 2004.

{¶6} The charges against Ford regarding T.H. resulted from an assault that took place on Cleveland's west side on August 30, 2001. At that time, T.H. lived near West 58th Street and Clark Avenue. On August 30, she was walking near West 52nd Street and Clark Avenue when she was approached by a tall black man. The man began walking next to T.H., put a gun against her side, and ordered her to walk with him and not make any noise. The man took T.H.

profile. When the DNA profiles match, it produces a "CODIS hit."

to the side of a building on Train Avenue, where he forced her to take her clothes off and lie on top of her jacket. He then forced her to perform fellatio and vaginally raped her. The man took T.H.'s clothes, leaving her with her shoes and jacket, and ordered her to wait two minutes before she left. T.H. waited and then walked to the street with her jacket wrapped around her. T.H. accepted a ride home from an unknown man in a truck.

{¶7} T.H.'s roommate called 911. T.H. was taken to Metrohealth Hospital ("Metro"). At the hospital, a physician treated T.H. and collected a rape kit. The rape kit was subsequently collected by law enforcement. DNA analysis was performed on the contents of the rape kit, and the DNA profile from the kit's vaginal samples included DNA from T.H. and Ford. A DNA analyst testified that the rarity of Ford's DNA profile in the sample was one in 12 quadrillion.

{¶8} The charges against Ford regarding L.G. stemmed from a home invasion that occurred on March 23, 2004. At the time, L.G. was an EMS sergeant for the city of Cleveland and a student in paramedic school. She lived in the upstairs unit of a two-family home on West 56th Street with her twin daughters. On the morning of March 23, L.G.'s daughters were at school and she was cleaning out her car and listening to recorded notes from her class in preparation for a test later that day. At one point, L.G. went inside her apartment to get a towel to clean the inside of her car. An unknown tall black man wearing a ski mask had followed her into the apartment and trapped her in the bathroom. The man grabbed the front of her neck and squeezed hard enough that she could not breathe and urinated on herself. The man then walked L.G. through the house to make sure that no one else was home.

{¶9} The man demanded money from L.G., and she gave him about $130 dollars. He said that this was not enough and he had to rape her. He told her that he had a knife and

threatened to come back and kill her children if she called the police. The man dragged her into the bathroom and forced her to perform fellatio. He then dragged her into the bedroom and spread a towel on the bed. L.G. pleaded with the man not to rape her, telling him that she had stitches in her vaginal area from a recent procedure and she was on her period. The man ignored this and vaginally raped her twice, first without a condom and a second time with a condom after forcing L.G. to apply Vaseline to her vagina.

{¶10} The man then ordered L.G. to take a shower and rinse out her mouth and vaginal area. Afterwards, he told her to count to 500 before she got out of the shower. He fled the house with the towel, the condom, the cash, and L.G.'s cell phone.

{¶11} Once the man left her house, L.G. drove to her sister's house in Newburgh Heights. She testified that she was embarrassed to call 911 because she did not want to be picked up by her coworkers and she did not want to call the police because her brother was a Cleveland police officer at the time. L.G. told her sister what had happened, and her sister called the police, who transported L.G. to Metro. L.G. was treated by a physician, and a rape kit was collected. At trial, L.G.'s treating physician testified that L.G. reported the incident as described above. He also testified that she had abrasions on her neck that were consistent with her report of being strangled by her attacker.

{¶12} Multiple DNA experts testified at trial as to the analysis done on DNA samples from L.G.'s rape kit. One expert testified that she was unable to detect male DNA in L.G.'s vaginal samples using traditional STR DNA analysis. A second expert testified that she used a different procedure, known as Y-STR analysis. This expert testified that in situations where a sample has a significant amount of female DNA, any male DNA that may be present in the sample is often masked or hidden in STR analysis. Y-STR analysis, however, allows the

analyst to isolate small amounts of male DNA. Using Y-STR analysis, the analyst detected a male profile that was consistent with Ford.

{¶13} The charges against Ford regarding S.G. also stemmed from a home invasion that was alleged to have occurred on March 29, 2004, several days after the attack against L.G. At the time, S.G. was living on West 56th Street in Cleveland in a house with her mother, her then-boyfriend, her three children, and a roommate. S.G. testified that on the evening of March 29, she was working on her computer when an unknown black man wearing a mask entered the home through her unlocked back door. She testified that the man said he had a knife and threatened her unless she did what she was told. The man then forced her into her roommate's bedroom and strangled her. According to S.G., he subsequently forced her to take off her clothes and vaginally raped her. S.G. testified that the man then told her not to move for five minutes, threatened her children, and left. S.G. waited until the man left and then went upstairs, where her children were sleeping and her mother was watching television. She told her mother what had happened, and her mother called 911. S.G. reported the incident to the police, and she was treated at the hospital and a rape kit was collected. At trial, a DNA expert testified that while she was able to exclude Ford as a contributor to most of the DNA samples that were tested, Ford was included as a contributor on one of the samples.

{¶14} Ford entered a plea of not guilty as to all counts, and the parties proceeded to engage in discovery. On July 14, 2017, the state filed a motion in limine to preclude any psychological or medical testimony that is deemed irrelevant to a valid defense in the state of Ohio. The state also requested a *Daubert* hearing in the event that Ford sought to introduce any such expert testimony at trial. The state also filed a notice of intent to introduce Evid.R. 404(B) evidence.

**{¶15}** On August 7, 2017, Ford filed a reply to the state's motion in limine, arguing that the motion was based on speculation. Ford also filed a brief in opposition to the state's notice of intent to introduce Evid.R. 404(B) evidence.

**{¶16}** On August 9, 2017, the court held a hearing on the state's motion in limine and notice of intent to introduce Evid.R. 404(B) evidence. After hearing arguments from the state and defense counsel as to these motions, Ford made an oral motion to disqualify his counsel. Ultimately, the court granted the motion in limine, precluding Ford from introducing psychological or medical testimony and rendering the state's request for a *Daubert* hearing moot. The court also denied Ford's motion to disqualify his counsel.

**{¶17}** Trial was set to begin on August 14, 2017. On that day, Ford was present in court and again filed a motion to disqualify his counsel. Ford began to argue his motion and ultimately screamed at the court, complaining that he was being "stifled." As a result of this conduct, deputies removed Ford from the courtroom. The court took a brief recess and reconvened later that morning. Ford continued to disrupt the proceedings and repeatedly stated that he did not want to be in the courtroom. The court ordered him to be returned to a holding cell. At the start of voir dire, the court informed the jury that the defendant was not present in the courtroom because he had asked to exercise his constitutional right not to be present.

**{¶18}** At trial, the state presented evidence in the form of photos, medical records, BCI reports, and witness testimony. All three witnesses testified as to their assaults. L.G.'s sister and S.G.'s mother both testified. The state also called various police officers, detectives, medical professionals, and DNA analysts to testify as to various aspects of the investigation for all three victims in this case. In addition, the state called two Evid.R. 404(B) witnesses who had been victims of sexual assault by Ford in separate cases. These witnesses were introduced by

the state to establish Ford's identity. A.H. served as a Evid.R. 404(B) witness for T.H., describing how she had been grabbed from the street and sexually assaulted on March 30, 2001. J.H. served as a Evid.R. 404(B) witness for L.G. and S.G., describing how she was the victim of a home invasion and sexual assault on April 2, 2004. During cross-examination, defense counsel was questioning J.H. as to the identity of her attacker. The following exchange took place:

> DEFENSE
> COUNSEL: You never got a full frontal view of the person who assaulted you, correct? Is that a fair statement?
>
> J.H.: Correct.
>
> DEFENSE
> COUNSEL: Okay.
>
> J.H.: The case was made on DNA evidence.

Immediately following this exchange, defense counsel moved to strike J.H.'s testimony regarding DNA evidence from the record, and the court ordered the testimony stricken and instructed the jury to disregard it.

{¶19} Shortly thereafter, at the conclusion of J.H.'s testimony, defense counsel asked for a mistrial at sidebar based on A.H.'s comment. In response, the prosecutor stated that its next witness would testify regarding the DNA evidence in J.H.'s case, rendering J.H.'s comment harmless. The court stated that, pending the introduction of the DNA evidence, the motion for mistrial was denied.

{¶20} After the state rested its case, it moved to dismiss one count of gross sexual imposition as against L.G. and all firearm specifications attached to Counts 15 through 19 as against S.G. The court granted this motion and dismissed the count and specifications.

Defense counsel renewed his objections as to testimony and documentary evidence from the Evid.R. 404(B) witnesses, and these objections were overruled. Defense counsel also made a Crim.R. 29 motion for acquittal. The court denied this motion. Upon resting the defense's case, defense counsel renewed its Crim.R. 29 motion, and the court denied this motion.

{¶21} The jury returned guilty verdicts as to all counts pertaining to T.H. and L.G. The jury returned not guilty verdicts as to all counts pertaining to S.G. Finally, Ford was found guilty as to the sexually violent predator specifications. At sentencing, the court merged the rape and kidnapping counts pertaining to L.G. The court sentenced Ford to a life term without possibility of parole.

{¶22} Ford appeals, presenting the following assignments of error for our review:

I.  Defense counsel provided ineffective assistance of counsel by failing to suppress an unduly prejudicial photo array that was later presented at trial, and failing to request separate trials for each alleged victim.

II.  The trial court erred when it failed to grant appellant's motion for a continuance or holding a hearing in regards to appellant's claim of ineffective assistance prior to trial.

III.  The trial court erred in admitting evidence that included testimony of prior other bad acts pursuant to Evid.R. 404(B).

IV.  The trial court erred in failing to declare a mistrial relating to comments made that DNA proved the guilt of appellant in another case, made by the state's 404(B) witness at trial.

## Law and Analysis

## I. Ineffective Assistance of Counsel

{¶23} In his first assignment of error, Ford argues that he received ineffective assistance of counsel for failing to suppress a photo array and failing to request separate trials for each alleged victim.

**{¶24}** To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. at 687-688.

**{¶25}** In deciding a claim of ineffective assistance, reviewing courts indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance, and defendants must therefore overcome the presumption that the challenged action might be considered sound trial strategy. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland*.

## A. Photo Array

**{¶26}** Failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made. *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28, citing *State v. Finch*, 5th Dist. Licking No. 11-CA-114, 2012-Ohio-4727, ¶ 28. In order to establish that a motion to suppress would have been successful, a defendant is required to show that there was a basis to suppress the evidence in question. *Id*.

**{¶27}** "An identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process." *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 63, citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Courts employ a two-prong analysis to determine

whether a challenged identification is admissible. *Id.* First, the court considers whether the defendant has shown that the identification procedure was unduly suggestive. If the defendant can establish this, the court then considers whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *Id.*, citing *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004 Ohio 3570, ¶ 19, citing *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist. 1997).

{¶28} Ford has not established that the identification procedure employed here was unduly suggestive. He argues that the procedure was unduly suggestive because it was preceded by a detective telling L.G. that the case was being reopened and that there was a suspect in the case. In support of this argument, he cites a case in which this court found that a photo array was unduly suggestive where the detective administering the procedure informed the witness that the suspect was one of the individuals included in the photo array. *State v. Jones*, 8th Dist. Cuyahoga No. 85025, 2005-Ohio-2620, ¶ 16. This is not what occurred in the underlying case. Although L.G. had been informed that there was a suspect in the case before the photo identification was administered, at no point during the identification procedure was she told that the suspect was in the photo array. On the contrary, the investigator administering the procedure testified that he read L.G. the photo array instructions, including the admonition that the array may or may not contain a photo of her attacker. Because Ford has not established that the photo array procedure was unduly suggestive, there is no basis on which to conclude that a motion to suppress this evidence would have been successful had defense counsel filed one. Therefore, we cannot conclude that defense counsel's decision not to file a motion to suppress amounts to ineffective assistance of counsel.

**B. Separate Trials**

**{¶29}** Ford also argues that his counsel was ineffective for failing to move for separate trials for each alleged victim. Specifically, he claims that he was prejudiced by incidents involving three separate victims being tried to one factfinder. To determine whether defense counsel was ineffective for failing to request severance, we consider whether the failure to file a motion to sever was deficient and, if so, whether Ford was prejudiced by this failure. This analysis, in turn, is based on whether joinder was appropriate in the first place.

**{¶30}** The Ohio Supreme Court has held that it is well settled that the law favors joining multiple offenses in a single trial under Crim.R. 8(A). *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373. Joinder is permitted where the offenses "are of the same or similar character, or are based on the same act or transaction * * *" Crim.R. 8(A). While joinder is favored, defendants may move to sever pursuant to Crim.R. 14 upon an affirmative showing of prejudice. *State v. Torres*, 66 Ohio St.2d 340, 342, 421 N.E.2d 1288 (1981). The state has two ways in which it can attempt to challenge a defendant's showing of prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). First, it can defeat a claim of prejudice by showing that it could have introduced evidence of other crimes under the other acts portion of Evid.R. 404(B) if the offenses had been severed for trial. *Id*., citing *Bradley v. United States*, 140 U.S.App.D.C. 7, 433 F.2d 1113 (1969). Second, it can show that evidence of each crime joined at trial is simple and direct. *Id*., citing *State v. Roberts*, 62 Ohio St.2d 170, 175, 405 N.E.2d 247 (1980). If the state can satisfy the "simple and direct" test, an accused is not prejudiced by joinder regardless of the admissibility of the evidence under Evid.R. 404(B). *Id*.

**{¶31}** The "simple and direct" test is satisfied when evidence is simple and direct enough that the jury can easily segregate the evidence. *State v. Johnson*, 88 Ohio St.3d 95, 110, 2000-Ohio-276, 723 N.E.2d 1054. Ford argues that the evidence in this case was not simple

and direct because the state relied on Evid.R. 404(B) evidence. We disagree. The crimes with which Ford was charged were fundamentally similar as they affected each of the three victims. The similarity of the charges in the indictment, however, does not preclude satisfaction of the simple and direct evidence test. "'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.'" *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 16, quoting *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33. Here, the evidence of each crime was presented without significant overlap. The state introduced separate evidence for each victim. Each alleged victim testified at length as to distinct acts allegedly committed by Ford at separate times and separate places. The rape kit and DNA evidence for each victim was analyzed separately by different witnesses. Finally, the jury returned a verdict of not guilty as to all charges pertaining to victim S.G., presumably because it was able to segregate the evidence presented as to each victim at trial. Because we find that joinder was appropriate in this case, we reject Ford's argument that he was prejudiced by his counsel's failure to move for separate trials as to each victim. Ford's first assignment of error is overruled.

## II. Motion for Continuance

{¶32} In his second assignment of error, Ford argues that the trial court erred when it failed to grant his motion to continue trial or hold a hearing on the issue of his claim that his counsel was ineffective. As an initial matter, we note that Ford's arguments here appear to be premised on several mischaracterizations of the procedural history in this case. First, Ford's August 9, 2017 motion to continue trial was granted, and trial was continued to August 14, 2017. The basis of this motion was that Ford's counsel had been engaged in another criminal trial.

Second, Ford seems to be conflating the motion to continue trial with his motions to disqualify his counsel, all of which were denied. To the extent that he is now attempting to challenge the court's denial of his motions to disqualify his counsel, we find his argument unpersuasive.

{¶33} A trial court's decision on a defendant's motion to terminate counsel will not be reversed absent an abuse of discretion. *State v. Nicholson*, 8th Dist. Cuyahoga No. 89245, 2007-Ohio-6653, ¶ 10, citing *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765; *State v. Cowans*, 87 Ohio St.3d 68, 73, 1999-Ohio-250, 717 N.E.2d 298. For a court to grant a defendant's motion to terminate counsel, a defendant must "show a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel." *Id.*, citing *State v. Dawalt*, 9th Dist. Medina No. 06CA0059-M, 2007-Ohio-2438, citing *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988).

{¶34} Ford asserts that he claimed ineffective assistance of counsel prior to trial on the basis that his trial counsel had not adequately communicated to him regarding this case, nor had he been permitted to subpoena expert witnesses in the case. Both of these issues were thoroughly addressed at pretrial hearings. With respect to the level of communication between Ford and his counsel, counsel stated that he had intermittently communicated with Ford, although he did admit that they had not communicated recently. Ford's trial counsel also stated that much of the discovery in the case was marked "counsel only," which inherently limited the extent to which he could communicate with Ford about his case. The record also reflects that Ford refused to participate at various points in the proceedings and, on at least one occasion, refused to confer with his counsel before trial. With respect to Ford's claimed inability to subpoena expert witnesses, Ford indicated that he wished to introduce evidence from an expert he had used in a previous trial. This was the subject of the state's motion in limine, which the

trial court granted, as there was no discernible relevance to the expert testimony. Further, at a later point in the proceedings, trial counsel stated that he had communicated or attempted to communicate with the witnesses identified by Ford and had concluded that any potential testimony they could offer would be harmful to Ford's defense.

{¶35} The record makes clear that Ford and his trial counsel had a volatile relationship. This relationship, though strained, did not suffer from a complete breakdown in communication. Therefore, we cannot conclude that the trial court abused its discretion by denying Ford's motion to disqualify his counsel. Based on the foregoing, Ford's second assignment of error is overruled.

## III. Evid.R. 404(B)

{¶36} In Ford's third assignment of error, he argues that the trial court erred in admitting evidence that included testimony of prior bad acts pursuant to Evid.R. 404(B). Specifically, Ford argues that the cumulative effect of introducing testimony from A.H. and J.H. substantially prejudiced him because there was a reasonable probability that their testimony would be construed as propensity evidence.

{¶37} Generally, "evidence that a defendant committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15, citing *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). Evid.R. 404(B) provides that other acts evidence is "not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid.R. 404(B). Exceptions to the rule provide that other acts evidence "may be

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Further, R.C. 2945.59 provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶38}** Decisions regarding the admissibility of other acts evidence are evidentiary determinations that rest within the sound discretion of the trial court. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. A reviewing court will not disturb a trial court's evidentiary decision in the absence of an abuse of discretion that created material prejudice. *State v. Diaz*, 2016-Ohio-5523, 69 N.E.3d 1182, ¶ 57 (8th Dist.), citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66. An abuse of discretion is more than a mere error of law or judgment; instead, it implies that a trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶39}** In determining whether other acts evidence is admissible, trial courts conduct a three-step analysis: (1) consider whether the evidence is relevant pursuant to Evid.R. 401; (2) consider whether the evidence is presented to prove the character of the accused in order to show activity in conformity therewith or whether the evidence is presented for a legitimate purpose pursuant to Evid.R. 404(B); and (3) consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice pursuant to Evid.R. 403. *Williams* at ¶ 20.

{¶40} Because Ford concedes in his brief that the testimony of A.H. and J.H. was relevant, we begin with the second step of the *Williams* analysis. The state indicated that it introduced the evidence in order to establish a behavioral fingerprint that it could use to establish Ford's identity beyond a reasonable doubt. "A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." *State v. Lowe*, 69 Ohio St.3d 527, 531, 1994-Ohio-345, 634 N.E.2d 616.

{¶41} Through the testimony of A.H. and J.H., the state was able to establish that Ford's behavior had certain characteristics that helped to establish his identity. J.H.'s testimony illustrated several characteristics that mirrored L.G.'s testimony. Examples of this include that both incidents began as home invasions where the suspect wore a mask and gloves, the suspect in both incidents grabbed the victim around the throat, the suspect indicated to both victims that he had been watching them, the suspect made the victim lay down on top of something, and the suspect made the victim wait a specific period while he fled the scene. Similarly, A.H.'s testimony illustrated several characteristics that mirrored T.H.'s testimony. In both victims' accounts, the suspect was a tall black male who approached unknown females in similar locations on Cleveland's west side, the suspect ordered the victims to lie on top of their clothing, and the suspect took an item or items of the victim's clothing when he fled. All of these similarities indicate that the state's purpose in introducing A.H.'s and J.H.'s testimony was to establish Ford's identity.

{¶42} Finally, Ford argues that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. In support of this assertion, Ford claims that

because L.G. could not see her attacker and the DNA evidence as to her assault was relatively less compelling, the jury was forced to rely on propensity evidence. We disagree. All evidence introduced against a criminal defendant is prejudicial. Unfairly prejudicial evidence, though, tends to appeal to a jury's emotional sympathies rather than intellect. *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 2001-Ohio-248, 743 N.E.2d 890, quoting Weissenberger's *Ohio Evidence* (2000) 85-87, Section 403.3. Here, the trial court gave the jury a limiting instruction, directing the jury that it was not to consider the other acts evidence to prove Ford's character to show that he acted in conformity with that character. Despite Ford's assertion that the jury "relied" on inappropriate propensity evidence, we may presume that the jury followed this limiting instruction. Moreover, in light of the extensive and specific evidence presented by the state as to each criminal violation, together with the jury's implied ability to distinguish the evidence based on their distinct verdicts, including their not guilty verdict, we do not find confusion or unfair prejudice. Based on the foregoing analysis, there is no indication that the trial court abused its discretion in admitting other acts evidence in this case. Therefore, Ford's third assignment of error is overruled.

## IV. Mistrial

{¶43} In Ford's fourth and final assignment of error, he argues that the court erred by failing to grant a mistrial as a result of two discrete pieces of testimony from Evid.R. 404(B) witnesses A.H. and J.H. First, Ford asserts that the following exchange between A.H. and defense counsel warranted a mistrial:

DEFENSE
COUNSEL: Were you able to see his facial features though?

A.H.: Yes.

DEFENSE
COUNSEL:        Get a good look at them?

A.H.:   Yes.    There was one thing that really stood out to me.

DEFENSE
COUNSEL:        What was it?

A.H.:   It was a gap between his bottom teeth, which was different.
DEFENSE
COUNSEL:        When you saw the man in 2005 and recognized that person as the
                person that attacked you, and you said you called detectives and told
                them that, did you tell them that detail as well?

A.H.:   Yes. This is what I wanted to know, did he have that. And he couldn't
        answer me at the time.

DEFENSE
COUNSEL:        Did he come to answer you at any time after that though?

A.H.:   After DNA had already come back.

DEFENSE
COUNSEL:        And what did you learn?

A.H.:   With DNA?

**{¶44}** Defense counsel objected, and the trial court sustained this objection.  A.H.'s

testimony then concluded.

**{¶45}** The second piece of testimony that Ford argues warrants a mistrial is the exchange

that took place between defense counsel and J.H. in which J.H. testified that the case was made

on DNA evidence.   According to Ford, both of these comments mention DNA evidence

establishing a prior case against him.

**{¶46}** The granting or denial of a mistrial "rests in the sound discretion of the trial court

and will not be disturbed on appeal absent an abuse of discretion."   *State v. Iacona*, 93 Ohio

St.3d 83, 100, 2001-Ohio-1292, 752 N.E.2d 937, citing *State v. Sage*, 31 Ohio St.3d 173, 182,

510 N.E.2d 343 (1987). A mistrial is an exceptional remedy that is to be declared "only when the ends of justice so require and a fair trial is no longer possible." *Cleveland v. Gonzalez*, 8th Dist. Cuyahoga No. 85070, 2005-Ohio-4413, ¶ 44, citing *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶47} First, we note that while Ford objected to A.H.'s testimony, he did not request a mistrial on the basis of this comment at trial. Second, we disagree with Ford that reference to DNA evidence "coming back" is tantamount to a reference to a prior conviction. To the extent that these comments may have impermissibly referenced prior convictions, such brief and ambiguous comments do not render a fair trial impossible. The Ohio Supreme Court has held that where reference to a prior arrest or conviction was fleeting and promptly followed by a curative instruction, such a reference did not unfairly prejudice the accused so as to require a mistrial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242; *State v. Garner*, 74 Ohio St.3d 49, 1995-Ohio-168, 656 N.E.2d 623. Here, the statements in question only alluded to DNA evidence against Ford, unlike the more explicit references to arrests and convictions in *Garner* and *Trimble*. Further, both statements were immediately addressed by the trial court. The trial court sustained defense counsel's objection to A.H.'s testimony. The court also struck the relevant portion of J.H.'s testimony from the record. Because any potential prejudice from this testimony was limited, and it was appropriately addressed by the trial court, the ends of justice in this case did not require a mistrial. Ford's fourth assignment of error is overruled.

{¶48} We affirm the judgment of the trial court.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, PRESIDING JUDGE

MELODY J. STEWART, J., and
PATRICIA ANN BLACKMON, J., CONCUR