[Cite as *State v. Galindez*, 2026-Ohio-832.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :
                                   No. 115166
    v.                                :

ANGELO M. GALINDEZ,                      :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 12, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692190

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Megan Helton and Samantha Sohl, Assistant Prosecuting Attorneys, *for appellee*.

Mary Catherine Corrigan, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Angelo Galindez appeals his convictions for several sex offenses committed against a child less than ten years old, including rape, and several voyeurism-related offenses committed against separate victims, including a minor. For the following reasons, we affirm.

{¶ 2} Galindez sexually abused his daughter beginning when she was eight years old. The victim described several instances of being raped or touched in a sexual manner by Galindez in detail. The abuse continued for a couple years, but the young victim, 11 years old at the time of trial, described several events occurring in her bedroom and the garage involving both sexual conduct and contact. The victim stated that Galindez ejaculated during the forced anal, vaginal, and oral penetration on those occasions, although the victim's testimony was in childlike terms. The sexual abuse culminated on the morning of Mother's Day in 2023 with Galindez forcing the victim to perform oral sex in her closet. After Galindez ejaculated in her mouth, the victim spit the semen in a towel on the floor. That towel, and the DNA evidence identifying Galindez through the preserved seminal fluid, was a point of contention at trial.

{¶ 3} After raping the victim in the closet, Galindez discovered pornography on the victim's younger cousin's phone. Galindez told the victim's stepmother about the pornography. The stepmother, who later took legal custody of the victim, discovered that the victim had used the phone to view the pornography at Galindez's direction. The victim then disclosed the abuse to her and other family members, and authorities were called. The Cuyahoga County Division of Children and Family Services ("DCFS") became involved.

{¶ 4} The victim spoke with a DCFS sexual-abuse caseworker ("caseworker"), who conducted a forensic interview. According to the State, the caseworker explained that "[a] forensic interview is a non-leading interview in order

to collect information to determine if a child is abused and/or neglected in their home, and to make referrals for medical or psychological services." The types of referrals include advocacy services, depending on the specific nature or extent of the abuse. Thus, according to the caseworker, in order to determine the types of referrals for the child's support, the caseworker needs to learn what occurred, the timeframe, and the relationship between the abuser and the victim. During the caseworker's assessment, the victim disclosed the abuse that occurred.

{¶ 5} In addition to the caseworker, the victim was treated by a sexual assault nurse examiner ("nurse"). The victim described some of the incidents of oral sex Galindez forced her to perform, providing details and showing the nurse what she was forced to do to and with Galindez's penis. According to the nurse, the victim disclosed "penetration of vagina, penetration of anus, oral contact, oral in terms of her mouth to his genitalia, and body areas touched."

{¶ 6} In addition to the sexual abuse of the victim, Galindez secretly recorded and photographed the stepmother and her daughter in various stages of undress. The photos were discovered on Galindez's iPhone 11 and were date-stamped. Investigators also found self-taken photographs of Galindez on the phone that bore the same date stamps as the illegally obtained images. Related to that conduct, police investigators discovered an online purchase of a "hidden camera wi-fi bluetooth speaker 4K video wireless stereo music player spy hidden cameras, covert.com nanny cam for office/outside surveillance" from an account linked to Galindez. The illegal photographs were downloaded with a file path indicating they

were generated by the "covert.com nanny cam" purchased through his account. In addition, it was revealed that Galindez was recorded in a phone call directing another to erase all information from his iPhone 11.

{¶ 7} The jury convicted Galindez, and the trial court sentenced him to a term of life in prison with the possibility of parole after 15 years on two counts of anal rape of a child under the age of ten years old; life in prison with the possibility of parole after ten years on two counts of oral rape of a child under the age of ten; four years in prison each of four counts of illegal use of a minor or impaired person in nudity-oriented material or performance; three years in prison each on four counts of gross sexual imposition; nine months in prison each on five counts of disseminating matter harmful to juveniles and voyeurism. All counts were ordered to be served concurrently. Additionally, Galindez was determined to be a Tier III sex offender/child offender.

{¶ 8} In this timely appeal, Galindez asserts four assignments of error, which will be reordered for the ease of reading.

{¶ 9} In the third assignment of error, Galindez claims his trial counsel rendered ineffective assistance by failing to file a motion for relief from the joining of the separate sexual-assault charges and the voyeurism-related charges.

{¶ 10} In order to establish a claim for ineffective assistance of trial counsel, a defendant must show "that counsel's performance fell below an objective standard of reasonable representation," and "that there is a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v.*

*Drain*, 2022-Ohio-3697, ¶ 36, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).  A "reasonable probability" is a probability of a different result sufficient enough to undermine confidence in the outcome; in other words, the defendant must demonstrate he was prejudiced by the deficient performance.  *Drain* at ¶ 52, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004), and *Strickland* at 694.  As the State notes, the analysis in this case turns on whether the joinder was appropriate.  *See State v. Powell*, 2019-Ohio-4345, ¶ 70 (8th Dist.), citing *State v. Ford*, 2018-Ohio-5169, ¶ 29 (8th Dist.).  If it was, it cannot be concluded that his trial counsel's performance fell below an objective standard of reasonable representation.

{¶ 11}  Under Crim.R. 8(A), two or more offenses may be charged under one indictment if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."  In general, the law favors joinder when "the offenses charged 'are of the same or similar character.'"  *State v. Diar*, 2008-Ohio-6266, ¶ 94, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).  Nevertheless, under Crim.R. 14, the trial court has discretion to grant severance of claims if it appears that the defendant would be prejudiced by the joinder.  *Id.* at ¶ 95.  The defendant bears the burden of proving prejudice.  *Id.*, citing *State v. Brinkley*, 2005-Ohio-1507, ¶ 29.

{¶ 12}  The State can refute a claim of prejudice in two ways: demonstrating that the evidence of each crime is simple and direct, referred to as the "joinder test,"

or demonstrating that the evidence of the other crimes would be admissible even if the counts were severed, referred to as the "other acts" test. *Id.* at ¶ 96, citing *Lott*, at 163. The State in this case focuses on the joinder test. When the evidence is "simple and direct," the defendant is not considered to be "prejudiced by joinder regardless of the nonadmissibility of evidence of the crimes as other acts under Evid.R. 404(B)." *Powell* at ¶ 74, citing *Lott* at 163.

{¶ 13} In this appeal, Galindez solely relies on *State v. Kramer-Kelly*, 2023-Ohio-1031 (8th Dist.), which reversed two rape convictions after the panel concluded that the evidence supporting one of the rape charges was not as strong as the evidence of the separate rape committed against a separate victim as it was presented at trial. According to the *Kramer-Kelly* panel, the trial court abused its discretion by denying a pretrial motion to sever the trials because in the single trial concerning both victims, the jury could have applied or "accumulated" evidence from one of the rapes to support the evidence of the other. *Id.* at ¶ 70-71. Importantly, that conclusion was based on reviewing the trial itself, a review the trial court in *Kramer-Kelly* could not have conducted at the time the motion for relief from the joinder was filed. *See State v. Clinton*, 2017-Ohio-9423, ¶ 46, quoting *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992) (in seeking to reverse the denial of a motion for relief from joinder, the defendant must in part demonstrate "'that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial'" and based on that information, the trial court abused its discretion).

{¶ 14} As reiterated in *Kramer-Kelly,* however, evidence is simple and direct if it satisfies four requirements: "'if the jury is capable of readily separating the proof required for each offense, if the evidence is unlikely to confuse jurors, if the evidence is straightforward, and if there is little danger that the jury would "improperly consider testimony on one offense as corroborative of the other."'" *Kramer-Kelly* at ¶ 85, quoting *State v. Wright*, 2017-Ohio-8702, ¶ 52 (4th Dist.). Thus, *Kramer-Kelly* solely focused on the last element: the danger the jury in that case improperly considered testimony of one rape as corroborative of the other rape. That concern is not an issue in this case, and therefore, *Kramer-Kelly* is not controlling.

{¶ 15} The evidence in this case as to the charges of sexual abuse and the voyeurism-related charges was simple and direct, and there was little danger identified that the jury could improperly consider evidence supporting the voyeurism-related charges as Galindez's guilt of the sexual abuse. The evidence was presented in a victim-specific manner, with no overlap blurring the different crimes. *See, e.g., State v. Morris*, 2025-Ohio-3273, ¶ 28 (8th Dist.) ("[A] defendant is not prejudiced by joinder when each crime can be proven by simple and direct evidence, such that a jury is likely to be able to segregate the proof required for each offense."). The voyeurism-related charges were to be, and were, proven through the police investigator's testimony establishing that Galindez purchased a device that captured the illegal images, which were also found on Galindez's iPhone 11 with a date stamp on the same day the self-photographs were taken. This evidence demonstrated his possession of the phone at the time the images were created or transferred to his

device. *See, e.g., State v. Miller*, 2023-Ohio-1141 (8th Dist.), and *State v. Wardlaw*, 2025-Ohio-2221 (8th Dist.). In *Miller* in particular, the panel concluded that joinder was not prejudicial, and therefore permissible, because "a trier of fact is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *Id*. at ¶ 33 and 84. As in *Miller,* nothing in this record suggested that the jury could be confused by the straightforward evidence of different criminal conduct: the rape and other sexual abuse committed against a child under the age of ten and the voyeurism-related charges committed against separate victims stemming from surreptitiously obtained video or photographic recordings.

{¶ 16} Although Galindez claims that the State ultimately failed to present the evidence in "cohesive and simple and direct" manner, he bases that argument on the fact that the law-enforcement witnesses testified to both sets of crimes during their appearance at trial. It is unclear how the testimony could be presented otherwise without the evidence being introduced in a nonlinear fashion by breaking up the same witness's testimony, which was a heavily criticized method of presenting a case as discussed in *Kramer-Kelly*. *Id*. at ¶ 88.

{¶ 17} Galindez has not demonstrated that a motion for relief from the joinder would have been successful. His entire argument is based on *Kramer-Kelly* with respect to the joinder test, which is distinguishable from the particulars of this case. Because Galindez could not demonstrate that a motion to sever the trials would have been successful if filed based on his inability to demonstrate prejudice

under *Miller,* his trial counsel's performance did not fall below an objective standard of reasonable representation through the failure to file such a motion. The third assignment of error is overruled.

{¶ 18} In the fourth assignment of error, Galindez claims the trial court erred by admitting the forensic interview conducted by the caseworker despite the investigatory aspect of the interview and the testimonial nature of the victim's statements. He does not challenge the nurse's testimony. And, despite referring to the Confrontation Clause, Galindez failed to present any arguments or discussion of relevant authority in support of the constitutional argument. As a result, our focus is solely on the hearsay claim arising under Ohio law as it pertains to the caseworker's testimony. *See* App.R. 16(A)(7). On this issue, Galindez "implores" this panel to review the Euclid Police Department's role in requesting and observing the forensic interview and asks for this panel to consider the practice in general from a policy perspective. He seeks a declaration that the forensic interview should not be permitted to be used by a law enforcement officer. Galindez nevertheless concedes that the legal analysis hinges on whether there are any indicia that the interview was conducted for medical or diagnostic purposes. *See State v. Arnold*, 2010-Ohio-2742, ¶ 21.

{¶ 19} Under Evid.R. 803(4), statements for purposes of medical diagnosis or treatment, including those to social workers, are an exception to the general rule prohibiting the introduction of hearsay. In *Arnold*, the Ohio Supreme Court concluded that statements made to a social worker were admissible at trial for

purposes of evaluation, diagnosis, and treatment. In that case, the child victim in a sexual-assault matter explained to a social worker the defendant raped her. *Id.* at ¶ 6. *Arnold* recognized that while social workers have a "dual purpose" and are tasked with the gathering of information to investigate a crime, they also elicit information necessary for medical treatment, including any psychological treatment, for future services. *Id.* As a result, a victim's statements describing the acts of the defendant are necessary for medical diagnosis and are admissible even if those statements serve a dual purpose that includes investigatory ends. *Id.* at ¶ 43; *see also State v. Freeman*, 2010-Ohio-3714, ¶ 49 (8th Dist.). Courts have repeatedly held that statements to a social worker are not hearsay and permitted under the exception of Evid.R. 803 where a social worker interviews the victim as part of an ongoing attempt to determine the extent of sexual abuse and then refers the child for the appropriate treatment. *See, e.g., id.*; *State v. Wardlaw*, 2025-Ohio-2221, ¶ 46 (8th Dist.).

{¶ 20} It is important to note that "the fact that the information initially gathered by the social workers was subsequently used by the [S]tate in its prosecution, however, does not change the fact that these statements were not made for investigative or prosecutorial purposes." *State v. Fears*, 2017-Ohio-6978, ¶ 38 (8th Dist.), citing *State v. Muttart*, 2007-Ohio-5267, ¶ 62. Further, when asked at trial whether any referrals occurred following the interview, the caseworker testified to providing the family with the name of a psychologist at the Cleveland Rape Crisis Center for future treatment. Tr. 854. Although she was not sure whether therapy

occurred, the treatment was, at the least, recommended based on the forensic interview. In light of that and the vast authority permitting the introduction of the forensic interview, authority not addressed by Galindez, the fourth assignment of error is overruled.

{¶ 21} And finally, in the first and second assignments of error, Galindez claims his convictions for sexually abusing and raping the victim and his convictions for the voyeurism-related charges are against the weight of the evidence.

{¶ 22} When evaluating a claim that a verdict is against the manifest weight of the evidence, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice" and the conviction must be reversed and a new trial ordered. *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983).

{¶ 23} With respect to the rapes and sexual abuse committed against the victim, Galindez claims that the jury lost its way because the jury could not consider the DNA evidence on the towel that inculpated Galindez in raping the victim in the closet on Mother's Day. The DNA evidence was excluded because, according to the trial court, the State added all the analysts, who tested the DNA material, after

Galindez filed a belated motion in limine to exclude the report three days into the trial. Galindez based that motion on the Confrontation Clause and *Arizona v. Smith*, 602 U.S. 779 (2024). *Smith,* generally speaking, held that a Confrontation Clause violation exists if the maker of a scientific conclusion relies on the truth of another analysist's statement and that other analysist does not testify in the trial. *Id.* The validity of the evidentiary ruling is not an issue in this appeal.

{¶ 24} In addition to the lack of DNA evidence, Galindez claims that the stepmother had a reason to fabricate her testimony because she later sought legal custody of the victim. And finally, he claims that the jury lost its way in convicting him of voyeurism-related charges because other people had access to Galindez's iPhone 11 and lived in the house.

{¶ 25} At the onset of this analysis, it is important to note the broad brush with which Galindez presents his argument. For example, the excluded DNA evidence in this case is only relevant to one of the four rape counts, the oral rape in the victim's closet on Mother's Day in 2023. Despite this, Galindez claims that the lack of DNA evidence to all charges demonstrates that the jury lost its way. The lack of DNA evidence for rapes committed, especially in cases in which a child under the age of ten discloses systemic abuse, does not render a conviction as being against the weight of the evidence. And even without the DNA evidence with respect to the one incident of rape, the victim's testimony as to that event is not inherently incredible.

{¶ 26} Further, although Galindez has identified a possible motive for the stepmother to fabricate her trial testimony based on her seeking custody of the victim after the fact, that argument is purely speculative and ignores the overwhelming evidence of his guilt introduced through the victim's detailed and specific testimony implicating Galindez, who has not demonstrated that the victim's testimony is unreliable in any way. The jury did not lose its way or create a manifest miscarriage of justice in convicting Galindez of the rape and other sexual abuse of the victim.

{¶ 27} And finally, as it pertains to the voyeurism-related charges, the State systematically presented evidence that the photos or recordings on Galindez's iPhone 11 were downloaded or created on the phone the same day that Galindez had possession of the phone. The self-photograph images demonstrated his possession of the phone. When that is coupled with the evidence demonstrating that Galindez bought the camera generating the illegal images on his phone and Galindez's plea to another to have that information deleted before it could be recovered by authorities, we cannot conclude the jury lost its way in convicting him of the voyeurism-related offenses against the other two victims.

{¶ 28} The first and second assignments of error are overruled.

{¶ 29} The convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
DEENA R. CALABRESE, J., CONCUR