[Cite as *State v. Wells*, 2024-Ohio-2155.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 30549 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| EUGENE WELLS | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2019-08-2669 |

DECISION AND JOURNAL ENTRY

Dated: June 5, 2024

CARR, Judge.

{¶1} Appellant, Eugene Wells, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of a shooting that occurred at a convenience store in Akron on June 3, 2019. W.M. died as a result of the incident.

{¶3} In connection with the shooting, the Summit County Grand Jury indicted Wells on one count of murder with a firearm specification; one count of felony murder with a firearm specification; one count of felonious assault with a firearm specification; and two counts of having weapons while under disability. Wells pleaded not guilty to the charges at arraignment.

{¶4} The matter proceeded to a jury trial. The State moved to dismiss one count of having weapons while under disability. The jury found Wells guilty of the four remaining counts

and the attendant specifications.  After conducting a merger analysis, the trial court imposed a total sentence of 18 years to life imprisonment.

{¶5}   On appeal, Wells raises three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING A CONTINUANCE.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL.

{¶6}   In his first assignment of error, Wells argues that the trial court abused its discretion in denying his motion for a continuance on the first day of trial.  In his second assignment of error, Wells argues that the trial court violated his right to counsel by denying him the ability to select an attorney of his choosing.

Background

{¶7}   The arguments that Wells makes in support of his first and second assignments of error arise out of events that occurred on the first day of trial.  Wells was indicted on August 8, 2019.  In addition to several pretrial delays that were attributable to the COVID-19 pandemic, the trial court granted multiple continuance at Wells' request.  The matter was also continued on one occasion at the request of the State.  The parties ultimately appeared for trial on November 14, 2022.

{¶8}   When the parties appeared for trial, Wells informed the trial court that he wished to dismiss defense counsel for ineffectiveness.  Though Wells noted that his family had a long-standing relationship with defense counsel, and that defense counsel had been retained, Wells

suggested that defense counsel had aligned himself with the prosecution. Wells expressed additional concerns over the fact that he had not been given an adequate opportunity to review discovery. When given an opportunity to respond, defense counsel stated that he was prepared for trial and that Wells' concerns regarding an inappropriate relationship with the prosecution were simply not true. Defense counsel also stated that he had addressed Wells' concerns in the days leading up to trial and that defense counsel understood those issues to be behind them. The assistant prosecutor stated that defense counsel had undertaken zealous representation of Wells during the plea-bargaining process and throughout the pretrial proceedings. The trial court informed Wells that defense counsel had a formidable reputation. These comments notwithstanding, Wells asked for a continuance in order to find new counsel.

{¶9} At that point, the deputy sheriff escorted Wells to the holding area and the attorneys met with the trial court in chambers. The trial court then afforded Wells another opportunity to confer with defense counsel. After the recess, the trial court stated on the record that it was exercising its discretion to deny the motion for a continuance. The trial court noted that the case had been pending for more than three years and that, due to the backlog created by the pandemic, it could be as long as six months before the case could be rescheduled. After expressing concern that Wells might be engaging in delay tactics, the trial court found that additional delays would result in prejudice to the State and would be unfair to the witnesses and victims. The trial court further observed that Wells had been working with defense counsel for the entirety of the case and that defense counsel was prepared to proceed. In response to Wells' assertion that defense counsel had aligned himself with the prosecution, the trial court found that Wells had not presented any evidence in support of those claims.

{¶10}   After the trial court denied Wells' motion, Wells indicated that he was in possession of an unfiled, written motion that set forth his argument to dismiss defense counsel.  After taking a moment to review the motion, the trial court indicated that the motion did not identify any additional evidence in support of Wells' claim.  To the extent Wells complained that defense counsel had failed to procure a reasonable plea offer, the trial court noted that defense counsel did not have unilateral authority in that regard.  At that point, the assistant prosecutor stated that defense counsel had attempted to get the murder charges reduced to either voluntary or involuntary manslaughter, but the State had maintained its position that it would not enter into a plea agreement unless Wells pleaded guilty to murder with the attendant firearm specification.  Wells further protested that he had not been given adequate time to review discovery but the trial court maintained its position that a continuance was unwarranted.

{¶11}   At the close of the discussion, the trial count informed Wells that he had the options of proceeding with his defense counsel as his lawyer or proceeding pro se with defense counsel serving as standby counsel.  Wells responded that he preferred to represent himself without the assistance of standby counsel.  The trial court ruled that defense counsel would remain as standby counsel.  When defense counsel moved to withdraw, the trial court denied the motion on the basis that permitting defense counsel to withdraw would not be in the interest of justice.  The trial court instructed the assistant prosecutor and defense counsel to ensure that Wells was in possession of all written discovery.  Upon noticing that there was a second defense attorney in the courtroom who had experience with murder trials, the trial court asked Wells if he preferred the second defense attorney to be appointed as standby counsel. Wells responded in the affirmative.  The trial court then called a lunch recess so that Wells could review discovery and the second defense attorney could confer with original defense counsel.

{¶12}   When the parties returned from the lunch recess, Wells informed the trial court that he wished to proceed with original defense counsel representing him.  Wells reached that decision after speaking with original defense counsel and the second defense attorney over the lunch break. The matter proceeded to trial with original defense counsel representing Wells.

Sixth Amendment Right to Counsel

{¶13}   Wells contends that the trial court violated his Sixth Amendment right to counsel by denying him the opportunity to select an attorney of his own choosing.  Wells points to the United States Supreme Court's decision in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006), in support of the proposition that a trial court commits reversible error when it denies a defendant capable of retaining counsel from selecting an attorney of his choosing.

{¶14}   The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."  The Supreme Court has recognized that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *Gonzalez-Lopez* at 144.  Notably, while a criminal defendant has a constitutional right to his choice of counsel, that right is not unqualified. *State v. Keenan*, 81 Ohio St.3d 133, 137 (1998).  "[C]ourts have recognized that [the defendant's] right is balanced against the need for efficient and effective administration of criminal justice." (Internal quotations and citations omitted.) *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 9.  "[A] trial court [ ] [possesses] wide latitude in balancing the right to counsel of choice against the needs of fairness * * * and against the demands of its calendar[.]" (Internal citations omitted.) *Gonzalez-Lopez* at 152.

{¶15}   Wells cites extensively to *Gonzales-Lopez* in his merit brief.  *Gonzales-Lopez* involved a scenario where a defendant was denied his choice of defense counsel when his preferred

attorney was denied admission pro hac vice on the grounds that the attorney had violated a professional conduct rule. *Id*. at 142-143. The defendant was convicted after proceeding to trial with substitute counsel. *Id*. at 143. The Government conceded that the defendant was denied his right to an attorney of his choosing but argued that "the Sixth Amendment violation is not 'complete' unless the defendant can show that * * * substitute counsel's performance was deficient and that defendant was prejudiced by it." *Id*. at 144. The Supreme Court rejected that argument and concluded that the "[d]eprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id*. at 148. In reaching this conclusion, however, the Supreme Court acknowledged that there were a number of limitations on the right to choose one's counsel, including the trial court's broad discretion in balancing the right against the need for fairness and against managing the demands of its docket. *Id*. at 152.

{¶16} In this case, Wells has failed to demonstrate that the trial court denied his Sixth Amendment right to counsel. Unlike *Gonzales-Lopez*, this case does not involve a scenario where Wells retained an attorney during the pretrial phase and the trial court denied him the opportunity to work with that attorney. Instead, Wells appeared for trial and for the first time raised concerns about defense counsel's performance. Although the trial court expressed apprehension that Wells was engaging in delay tactics, the trial court engaged in a lengthy colloquy where it provided Wells with an opportunity to explain his concerns regarding defense counsel. Wells was unable to substantiate his claims regarding defense counsel's level of preparedness or an inappropriate relationship with the prosecution. Notably, after the trial court allowed Wells the opportunity to review written discovery with newly appointed standby counsel, Wells informed the trial court that he wished for defense counsel to continue his representation. Furthermore, this matter

involved circumstances where the case had been pending for more than three years and continuing the case would have resulted in another lengthy delay. Under these circumstances, Wells has failed to demonstrate that the trial court denied him his Sixth Amendment rights.

{¶17} Wells' second assignment of error is overruled.

<u>Denial of the Motion for a Continuance</u>

{¶18} In his first assignment of error, Wells suggests that the trial court abused its discretion in denying his motion for a continuance. Wells argues that his concerns regarding defense counsel outweighed the factors that supported the denial of a continuance. Although Wells acknowledges that this case had been pending for a long time, he contends that many of those delays were not attributable to him.

{¶19} An appellate court reviews a trial court's ruling on a motion for a continuance for an abuse of discretion. *State v. Arcoria*, 129 Ohio App.3d 376, 378 (9th Dist.1998); *Swedlow v. Reigler*, 9th Dist. Summit No. 26710, 2013-Ohio-5562, ¶ 9. An abuse of discretion means more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶20} "In determining whether the trial court abused its discretion by denying a motion for a continuance, this Court must 'apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party.'" *State v. Dawalt*, 9th Dist. Medina No. 06CA0059-M, 2007-Ohio-2438, ¶ 10, quoting *Burton v. Burton*, 132 Ohio App.3d 473, 476 (3d Dist.1999). The Supreme Court of Ohio has observed that

> [i]n evaluating a motion for a continuance, a court should [consider]: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or

contrived; whether the [movant] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id*., quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

**{¶21}** Wells' argument is without merit. Despite proceeding with retained defense counsel for more than three years, Wells, on the first day of trial, moved for a continuance in order to hire a new attorney. There is nothing in the record supporting Wells' contentions that there were issues with defense counsel's preparedness or his relationship with the prosecution. Moreover, the trial court noted that it could be as long as six months before the matter could be rescheduled in light of the backlog created by the COVID-19 pandemic. Under these circumstances, Wells has not demonstrated that the trial court's decision to deny his motion for a continuance was unreasonable, arbitrary, or unconscionable. It follows that the first assignment of error is overruled.

**{¶22}** Wells' first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THEREFORE, HIS CONVICTIONS ARE IN VIOLATION OF THE OHIO STATE CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**{¶23}** In his third assignment of error, Wells argues that his murder convictions were against the manifest weight of the evidence. This Court disagrees.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine

whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases.  *Id.*

{¶24}  The jury found Wells guilty of murder in violation of R.C. 2903.02(A), which states, "[n]o person shall purposely cause the death of another[.]"  R.C. 2901.22(A) states that "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

{¶25}  The jury also found Wells guilty of felony murder in violation of R.C. 2903.02(B), which states, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]"  With respect to the felony murder charge, the indictment specified that Wells caused the death of W.M. as a proximate result of Wells committing felonious assault, a second-degree felony.  R.C. 2903.11(A)(2) states, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."  R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense,

such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

{¶26} In support of his manifest weight challenge, Wells argues that the weight of the evidence does not support the conclusion that he intended to kill W.M. Relying on his own testimony at trial, Wells argues that he acted out of "blind rage" after being punched in the face.

{¶27} On June 3, 2019, W.M. and his girlfriend, C.B., drove to a convenience store located at the corner of Princeton Street and West South Street in Akron. W.M. exited their van and entered the store while C.B. and her four children waited in the vehicle. W.M. was the father of two of the children. Out of concern that the vehicle was illegally parked, C.B. moved the vehicle while W.M. was still inside the store. From that vantage point, C.B. saw W.M. exit the store and begin walking back toward the vehicle. At that point, two men exited a black Chevy Impala that had pulled up in front of the store. C.B. observed that the driver of the vehicle had a gun. Wells, who had been riding as a passenger in the Impala, began gesturing angrily toward W.M. Wells approached W.M. and threw a punch. W.M. threw a counterpunch. At that point, Wells pulled out a handgun and began shooting at W.M. W.M. attempted to run but he fell to the ground in the intersection. Wells continued to fire shots at W.M. after W.M. fell to the ground. C.B., who had watched the incident unfold, testified that the shooter fled the scene in the Impala. C.B. attempted to give W.M. emergency aid but ultimately his wounds proved to be fatal. A store customer who was standing at the counter at the time of the shooting gave similar testimony. Upon hearing the commotion, the customer looked outside the store and saw Wells pull a gun and shoot W.M., who was attempting to back away. The customer further testified that Wells "just continued to fire and fire and fire, and then, even once the guy fell, [Wells] still continued to walk over [W.M.] and shoot."

{¶28} A detective from the Akron Police Department was able to retrieve pole camera video footage that captured the shooting. The video, which was played at trial, showed that the events unfolded rapidly. Wells can be seen exiting the Impala and walking toward W.M. In response, W.M. turned and started walking toward Wells. Although the video does not contain audio, Wells can be seen swinging and flexing his arms in a downward fashion as the two men approached each other. When the two men came together, Wells threw the first punch and W.M. punched back. Wells then opened fire on W.M. and shot him numerous times. The video shows that W.M. attempted to retreat after Wells pointed the gun at him. On cross-examination, defense counsel asked the detective if the video suggested that W.M. might have been the aggressor during the incident. The detective disagreed with that premise and instead testified that, based on Wells' body language, Wells was the aggressor. Summit County's Chief Deputy Medical Examiner testified that W.M. sustained approximately 20 gunshots wounds. The bullets struck W.M. on numerous portions of his body, including his torso, chest, abdomen, and pelvis, in addition to his arms and legs.

{¶29} Wells testified in his own defense at trial. Wells testified that he traveled to the corner store to buy cigarillos and he had no intention of encountering W.M. Wells suggested that W.M. initiated the confrontation. Although Wells admitted to throwing the first punch, Wells claimed that he did so in response to W.M.'s aggressive behavior. When asked why he started shooting, Wells responded, "Because I was mad. I seen blood." Wells testified that he acted out of rage when he fired the gunshots and that he never planned or intended to kill W.M. Wells further testified that he had no recollection of how many times he fired his weapon.

{¶30} A careful review of the record reveals that this is not the exceptional case where the trier of fact clearly lost its way. The State presented ample evidence that Wells deliberately

initiated a confrontation with W.M. and, when W.M. attempted to defend himself, Wells shot W.M. approximately 20 times. The State presented eyewitness testimony and video evidence that Wells played the role of the aggressor throughout the course of the incident. Furthermore, the fact that Wells fired his gun approximately 20 times does not support his assertion that he was merely reacting to being punched. To the extent that Wells points to his own testimony in support of the notion that he had no recollection of how many times he fired his weapon, this Court remains mindful that "the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Darr*, 9th Dist. Medina No. 17CA0006-M, 2018-Ohio-2548, ¶ 32. This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible. *See State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, Wells has not demonstrated that his murder convictions resulted in a manifest injustice.

{¶31} Wells' third assignment of error is overruled.

III.

{¶32} Wells' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

ALLISON F. HIBBARD, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.